**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KIRA KUO, | |
| Plaintiff, | |
| v. | Case No. 1:25-cv-01846 |
| RESILIENCE HEALTHCARE – WEST SUBURBAN MEDICAL CENTER, LLC, and DR. MANOJ PRASAD, | Hon. Jeffrey I. Cummings |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF RULE 12(B)(6)
MOTION TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT**

Defendants Resilience Healthcare–West Suburban Medical Center, LLC ("West Suburban") and Dr. Manoj Prasad ("Dr. Prasad"), by their attorneys and pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), respectfully request that the Court dismiss with prejudice Count II of Plaintiff's Complaint.[1]

After performing services for West Suburban for about one month from early May until June, West Suburban terminated Plaintiff Kira Kuo ("Kuo") effective June 16, 2023. In December of 2024, Kuo filed a complaint against Defendants claiming that West Suburban had wrongfully terminated her in retaliation for submitting a workers' compensation claim, that Defendants had defamed her, and that West Suburban had failed to provide her with a COBRA notice after her

---

[1] Because Defendants are moving to dismiss Count II of Plaintiff's Complaint, Defendants have not simultaneously answered Plaintiff's Complaint. To the extent that this Court requires Defendants' Answer to Plaintiff's Complaint while the motion is pending, Defendants respectfully request an extension of ten days in order to prepare their answer and affirmative defenses to Plaintiff's Complaint.

termination. Kuo's defamation claim (Count II) is based on two allegations: (1) that Dr. Prasad defamed her by making a police report to the Oak Park Police Department, informing them that Kuo claimed to be a licensed physician but was not, and (2) that Defendants defamed Kuo in a series of internal emails among the hospital's management and HR staff discussing the hospital's decision to terminate Kuo's employment. Kuo alleges that these email discussions, which mention poor performance and potential misconduct, are defamatory *per se*. Count II fails to state a claim because all of the allegedly defamatory statements were privileged statements—Dr. Prasad's police report is subject to absolute privilege and West Suburban's internal discussions of her termination are subject to conditional privilege. Moreover, even if the statements were not privileged, the allegedly defamatory statements are not actionable because they are categorically *not* defamatory *per se*, are statements of non-actionable opinion, and are subject to the defense of truth. For these reasons, Count II of Kuo's Complaint should be dismissed with prejudice under F.R.C.P. 12(b)(6).

## I.    FACTUAL BACKGROUND

West Suburban employed Kuo as an Infection Control Practitioner from around May 8, 2023 until June 16, 2023.[2] Compl. at ¶¶ 7 & 42. During the just over one-month period she worked for West Suburban, Kuo was responsible for infection control activities at West Suburban and related budgeting. Compl. at ¶ 8–9. She was also responsible for submitting reports to Centers for Disease Control Prevention (the CDC) and the National Health Safety Network (the NHSN). Compl. at ¶ 11. As part of West Suburban's submissions to the NHSN, Kuo was responsible for submitting a Centers for Medicare & Medicaid Services ("CMS") vaccination report. Compl. at

---

[2] Defendants deny as untrue many of the factual allegations in Plaintiff's Complaint. For ease of reading and because the Court must assume all of the facts properly alleged in the Complaint as true solely for purposes this motion to dismiss, Defendants will not label each and every fact as "alleged" from this point forward, despite Defendants reserving the right to contest any or all of them if necessary at the appropriate stage.

¶ 12. Kuo did not timely submit the required report on its due date of May 15, 2023, claiming that she was unable to do so because she had not been designated as West Suburban's Facility Administrator. Compl. at ¶ 13.

On May 24, 2023, Kuo claims that she suffered a workplace injury at West Suburban's revolving door entrance way due to an encounter with a "violent runaway male." Compl. at ¶ 24. Kuo was entering through West Suburban's revolving doors at the same time that the man was leaving, and Kuo says that both individuals were "inside the revolving door at the same time." Compl. at ¶ 25. The male pushed the revolving door in the opposite direction of Kuo and caused her head to hit the glass door. Compl. at ¶ 26. Subsequently, Kuo experienced pain, nausea, and dizziness. Compl. at ¶ 29–30. Kuo received treatment for her injury at Concentra and filed and Employee Accident-Injury Exposure Report with West Suburban. Compl. at ¶ 33–35. As a result of her injury, she took the day off work and was placed on light duty and restricted work for a period of time afterwards. Compl. at ¶ 36.

On June 16, 2023, Kuo was suspended indefinitely pending investigations of her conduct and later was notified that she was terminated effective June 16, 2023. Compl. at ¶¶ 42, 47.

In the Complaint, Kuo claims that Dr. Prasad made defamatory statements about her in three emails sent on June 15, 2023, June 16, 2023, and June 18, 2023 (the "June 2023 Emails"). Compl. at ¶ 52–54. A true and correct copy of the June 2023 Emails are attached hereto as **Group Exhibit A**.[3] The emails are communications among Dr. Prasad, Doris Gutierrez, Irene Dumanis,

---

[3] The Court may consider the Group Exhibit A because they are specifically referred to and relied upon by Kuo in the Complaint. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim"). Although Plaintiff may choose not to attach to the Complaint documents upon which her action is based, "a defendant may introduce certain pertinent documents if the plaintiff failed to do so." *Id.*

Sue Kester, and Susan Price. Compl. at ¶ 52. At the time of the emails, Doris Gutierrez was the Executive Director of HR at West Suburban, Irene Dumanis was West Suburban's CFO, and Sue Kester and Susan Price provided HR support at West Suburban.

Kuo claims two categories of allegedly defamatory *per se* statements in the June 2023 Emails. The first category is statements imputing her commission of criminal offenses, comprising of statements that (1) Kuo used Dr. Prasad's signature without permission, (2) Kuo brought suspiciously large suitcases to and from work, (3) Kuo committed workers' compensation fraud, and (4) Kuo posed as a member of West Suburban's medical staff. Compl. at ¶ 67. The second category is communications related to Kuo's inability to perform in the discharge of duties, comprising of (1) a comment that her performance was "dismal" and (2) a comment that she engaged in "dereliction of her duties." Compl. at ¶ 68. Kuo additionally contends that on July 7, 2023, Dr. Prasad contacted the Oak Park Police Department via phone and verbally filed a report that he believed Kuo was falsely claiming to be a licensed physician. Compl. at ¶ 55. She claims that this statement was also false and defamatory. *Id.*

Defendants move to dismiss Count II of Plaintiff's Complaint for the reasons explained below.

## II.     ARGUMENT

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court accepts all well-pleaded facts as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

4

A.     **Defendant's Statements to the Oak Park Police Cannot be the Basis for a Defamation Claim Because They are Subject to an Absolute Privilege.**

Dr. Prasad made statements to the Oak Park Police pursuant to an absolute privilege, and the statements cannot support a defamation claim. To state a claim for defamation in Illinois, a plaintiff must show that the defendant made a false statement concerning plaintiff, that the defendant made an *unprivileged* publication to a third party by the defendant, and that the plaintiff was damaged. *Gibson v. Philip Morris, Inc.*, 292 Ill. App. 3d 267, 272 (5th Dist. 1997). In Illinois, reports to law enforcement officials of suspected criminal activity are protected from liability by an absolute privilege. *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 705 (N.D. Ill. 1990) (holding that statements made to Chicago police officers were absolutely privileged and could not result in liability); *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 969 (2d Dist. 1991) (ruling that an employer's statements to a police department that employee had threatened, harassed and assaulted a co-worker were absolutely privileged). Public policy favors the free and unhindered flow of information to law enforcement, even at the risk of occasional erroneous reports. *Layne*, 210 Ill. App. 3d at 969. Dr. Prasad's phone call to the Oak Park Police reporting that he believed Kuo was falsely representing her status as a licensed physician, if it occurred as alleged by Plaintiff, is a statement made to a law enforcement official about suspected criminal activity. Compl. at ¶55 & ¶ 70.  As such, his statement cannot be the basis for a defamation claim.

B.     **Defendants' June 2023 Emails Cannot Be the Basis for a Defamation Claim.**

Aside from Dr. Prasad's statements to the Oak Park Police, the only other alleged grounds for Kuo's defamation claim are the June 2023 Emails. Compl. at ¶ 52–53; Group Exhibit A.  These emails cannot be the basis for a defamation claim against Defendants for several reasons. First, all of the statements made by Defendants about her potential misconduct and job performance are subject to a qualified privilege and Kuo fails to plead any facts, or even allege that, Defendants

5

abused that privilege. Second, a number of the statements that Kuo alleges to be defamatory are categorically not defamatory *per se*. Third, the June 2023 Emails are expressions of opinion, which are protected and inactionable. Last, certain statements in the June 2023 Emails are subject to the defense of truth. Therefore, Kuo's defamation claims based on the June 2023 Emails must be dismissed.

(1)    ***All Statements Made in the June 2023 Emails are Privileged and Kuo Does Not Plead Abuse of the Qualified Privilege***

The June 2023 Emails are subject to a qualified privilege. The emails include statements regarding performance of Kuo's job duties that directly involve the interest of management at West Suburban. Compl. at ¶ 52–54.

Courts hold that an otherwise defamatory statement is not actionable if made under a qualified privilege. *Larson v. Decatur Mem'l Hosp*., 236 Ill. App. 3d 796, 799 (1992). Employers have a qualified privilege for three categories of communications: (1) those involving some interest of the person who published the defamatory matter; (2) those involving some interest of the person to whom the matter is published or a third party and (3) those involving a recognized public interest. *Jones v. W. & S. Life Ins. Co*., 91 F.3d 1032, 1035 (7th Cir. 1996); *Kuwik v. Starmark Star Market & Admin, Inc*., 156 Ill. 2d 16, 25 (1993). Courts have explicitly held that a qualified privilege exists for a corporate employer's investigation of suspicious conduct by its employees within the company. *Jones v. Britt Airways, Inc*., 622 F. Supp. 389, 392 (N.D. Ill. 1985); *Popko v. Continental Casualty Co*., 355 Ill. App. 3d 257, 264 (2005). Courts also hold that internal company communications about employee performance are subject to a qualified privilege. *Trask v. GE*, 207 F. Supp. 2d 843, 847 (N.D. Ill. 2002); *Kuwik*, 156 Ill. 2d at 16.

In this case, the June 2023 Emails are communications concerning West Suburban's interests and between relevant internal personnel at West Suburban. Compl. at ¶ 69. Such intra-

6

company communications are a legitimate setting to discuss an employee's performance, potential misconduct, and possible termination as all parties have a direct common interest in the hospital's management. Perhaps explaining why Plaintiff did not attach them to the Complaint, the June 2023 Emails plainly reflect West Suburban's consideration of whether to terminate Kuo during her probationary period of employment and are "sent on occasions where a misstatement of information should be afforded some degree of protection in order to facilitate the free flow of correct information." *Kuwik v. Starmark Star Mktg. & Admin., Inc*., 156 Ill. 2d 16, 30 (1993); *Larson v. Decatur Memorial Hospital*, 236 Ill. App. 3d 796, 803–04, (4th Dist. 1992) (holding that an employer's statements that employee used and sold drugs were protected under qualified privilege as part of the employer's investigation, even when the statements were ultimately proven false).

When the face of the pleading conveys that a qualified privilege exists, a plaintiff has the burden to allege actual malice, i.e., knowledge of falsity or reckless disregard of the truth, in order to overcome the qualified privilege and state a claim. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 43 (affirming a lower court's dismissal of a defamation claim in part because a qualified privilege was apparent from the pleadings and plaintiff had not sufficiently pled actual malice); *Quinn v. Jewel Food Stores*, 276 Ill. App. 3d 861, 872 (1995) (affirming lower court's dismissal of defamation claim when there was a clear qualified privilege to share information and plaintiff failed to plead abuse of the privilege). Furthermore, bare assertions of actual malice are not sufficient, a plaintiff must allege facts from which actual malice may be inferred. *Davis v. Crane*, 261 Ill. App. 3d 419, 431 (1st Dist. 1994).

Here, Kuo pleads no facts sufficient to show an abuse of the qualified privilege. Other than a bare assertion of "bad faith" and "malicious intent" (Compl. at ¶ 74), it is devoid of *factual*

*pleadings* suggesting that Defendants knew that any of these statements were false or recklessly disregarded the truth. Thus, Kuo's defamation claim cannot proceed.

> (2) ***Certain Allegedly Defamatory Statements Made by Defendants are Categorically Not Defamatory Per Se.***

Even if the June 2023 Emails were not privileged, which they are, Kuo has not identified statements that are actually defamatory *per se*. To state a claim for defamation *per se*, Kuo must allege a defamatory statement that either (i) imputes the commission of a criminal offense; (ii) imputes an infection with a loathsome communicable disease; (iii) imputes an inability to perform or want of integrity in the discharge of duties of employment; (iv) prejudice a party, or impute a lack of ability, in a person's trade, profession or business; or (v) impute adultery or fornication. *See e.g., Van Horne v. Muller*, 185 Ill. 2d 299, 307 (1999).

Here, the defamatory statements which Kuo alleges impute the commission of criminal offenses are not actually actionable. This is because the criminal offense defamation per se category, is limited only to a criminal offense that is "an indictable one, involving moral turpitude and be punishable by death or by imprisonment, and not merely a fine." *Mitchell v. Peoria Journal-Star, Inc*., 76 Ill.App.2d 154, 160 (3d Dist. 1966). Failing to obtain her employer's permission before submitting a document on Dr. Prasad's behalf, while potential grounds for termination, are not accusations of a serious criminal offense. Neither are statements that Kuo brought suspiciously brought large suitcases to and from work. Furthermore, although the Complaint alleges that the June 2023 Emails accused Kuo of "falsely alleging to be a licensed physician" (Compl. at ¶ 57), the actual emails do not go so far. *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co*., 114 Ill. 2d 278, 287 (1986) ("Where an exhibit is the instrument being sued upon, it controls over the facts alleged in the complaint"). The emails themselves only accuse Kuo of obtaining a Medical Staff Badge (despite her role at West Suburban as only an Infection Prevention

Practitioner) and taking advantage of free meals offered to the medical staff. *See Group Exhibit A*. Thus, the statements made about Kuo were not serious enough to create actionable statements of defamation *per se* for commission of a serious crime.

(3) ***Certain Allegedly Defamatory Statements Constitute Non-Actionable Opinion***

In addition to being privileged, statements made in the June 2023 Emails constitute expressions of non-actionable opinion. To differentiate between fact and nonactionable opinion courts ask whether: (1) the statement "has a precise and readily understood meaning;" (2) the statement is factually verifiable; and (3) the "literary or social context signals that [the statement] has factual content." *Solaia Tech., LLC v. Specialty Publ. Co*., 221 Ill. 2d 558, 581 (Ill. 2006). If it is plain that the speaker is "expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Haynes v. Alfred A. Knopf, Inc*., 8 F.3d 1222, 1227 (7th Cir. 1993) (citation omitted). Furthermore, "In determining whether statements are opinion or fact, allegedly libelous language must be evaluated in its broader context to assess whether a reader would have understood the allegation to be a statement of fact." *Maag v. Illinois Coalition for Jobs, Growth and Prosperity*, 368 Ill. App. 3d 844, 851 (5th Dist. 2006)

Here, Dr. Prasad's statements about Kuo's abuse of medical staff privileges, exaggerating her workplace injury, and bringing large suitcases into and out of the hospital are merely expressions of his opinions about Kuo. These statements were within the context of his considerations of whether West Suburban should terminate Kuo's employment and represent Dr. Prasad's subjective views of what her actions *could indicate*. In this broader context, the reader would not have understood Dr. Prasad's statements to be verifiable statements of fact so much as his conjectures. An employer's internal discussions about conjecture, couched in terms of

9

uncertainty, are "an interpretations, a theory, or surmises" that cannot be an actionable source of a defamation claim. *Solaia Tech LLC,* 221 Ill. 2d at 581; *See e.g.,* Group Exhibit A (remarking that "[t]he suitcase was chock full of things that no one bothered to question. I suspect that we will find items missing from our facility and stores although I do not know that to be a fact yet").

Additionally, Dr. Prasad's comments about Kuo's "performance from Day 1 has been dismal" is also nonactionable opinion. A general opinion that someone's job performance is "unsatisfactory" is not actionable. *Pompa v. Swanson*, 2013 IL App (2d) 120911, ¶ 23–24. Absent a reference to particular facts supporting that opinion, an opinion about a person's job performance does not imply the existence of any specific statement of fact that can be objectively verified. *Id; Kakuris v. Klein*, 88 Ill. App. 3d 597, 600 (1980) (dismissing as opinion employer's statements that employee exhibited a "[l]ack of achievement in basic goals" and "did not have the qualifications needed to achieve the objectives of the profession."); *Quinn v. Jewel Food Stores, Inc*., 276 Ill. App. 3d 861, 866–67 (1st Dist. 1995) (affirming dismissal with prejudice where employer's statements that employee was "cocky" and a "con artist" were merely opinions not objectively capable of proof or disproof and asserted no specific facts capable of being verified as true or false); *Perfect Choice Exteriors, LLC v. Better Bus. Bureau of Cent. Ill., Inc.*, 2018 IL App (3d) 150864, ¶ 27, 2018 IL App (3d) 150864, ¶ 27 (holding that evaluative judgments about performance in the form of a numerical rating *not* a verifiable factual statement). Similarly, here, a comment that Kuo's performance was "dismal" is merely nonactionable opinion.

### (4) *Certain Allegedly Defamatory Statements are Subject to the Defense of Truth*

Finally, Dr. Prasad's comment that Kuo engaged in dereliction of duties critical to the organization is subject to the defense of substantial truth. "Substantial truth'" appears where the "gist" or "sting" of the allegedly defamatory material is true, even if the defamatory material

alleged is not technically accurate in every detail. *Harrison v. Chicago Sun-Times, Inc*., 341 Ill. App. 3d 555, 563 (2003); *Moore v. People for the Ethical Treatment of Animals, Inc*., 402 Ill. App. 3d 62, 71 (2010). Courts will dismiss defamation claims when the face of the Complaint establishes the truth of the allegedly defamatory statement. *Coghlan*, 2013 IL App (1st) 120891, ¶ 45 (dismissing defamation claim for truth when a supposedly defamatory statement accused plaintiff of distributing proprietary information and plaintiff admitted as much in the exhibits to her complaint); *Cianci v. Pettibone Corp*., 298 Ill. App. 3d 419, 424 (1st Dist. 1998) (holding that allegations that an employee stole company property were non-defamatory because employee admitted using employer's courier service for private use).

Read in context, the June 2023 Emails show that the basis for Dr. Prasad's statement that Kuo was in "dereliction of her duties" was the fact that Kuo failed to timely submit a vaccination report to the NHSN. And Kuo's Complaint clearly admits that the sting of this statement is true. Compl. at ¶ 13. Even though Kuo claims that the delay was not her fault, this does not change the substantial truth of the statement that Kuo did not timely submit the CMS vaccination report on behalf of West Suburban. Therefore, Dr. Prasad's statement cannot be the basis for Kuo's defamation claim.

### III.    CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and dismiss with prejudice Count II of Plaintiff's Complaint.


Dated: February 28, 2025                          Respectfully submitted,

                                                  /s/ Charles B. Leuin
                                                  Charles B. Leuin (ARDC #6225447)
                                                  Elsa Schulz (ARDC #6342804)

11

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone: (312) 624-6344
cleuin@beneschlaw.com
eschulz@beneschlaw.com
*Attorneys for Defendants*

Group Exhibit A

**From:** Prasad, Manoj
**Sent:** Thursday, June 15, 2023 2:41 PM
**To:** Susan Kester <skester@bcnservices.com>; Susan Price <sprice@bcnservices.com>
**Cc:** Irene Dumanis <idumanis@Weisshospital.com>; Doris Gutierrez <dgutierrez@Weisshospital.com>
**Subject:** Next Week

I believe we will be separating Kira ko(?) the new Infection Prevention Individual from WSMC next week too. She is in her 90 day probation window but also on WC for an injury on the job to complicate matters. Will confirm shortly. The reason is that her performance form Day 1 has been dismal and now she sends something to the federal government CMS in my name WITHOUT asking me or informing me that has backfired for us and just come to light. Thoughts?

## Susan Price

| | |
|---|---|
| **From:** | Prasad, Manoj <mkp@westsubmc.com> |
| **Sent:** | Friday, June 16, 2023 1:44 PM |
| **To:** | Sue Kester; Susan Price |
| **Cc:** | Irene Dumanis; Doris Gutierrez |
| **Subject:** | RE: Next Week |

UPDATE:

As discussed, a few minutes ago, I have suspended Kira pending investigation into the data submission matter. I also had her hand over her Medical Staff Badge to me.

**From:** Prasad, Manoj
**Sent:** Friday, June 16, 2023 10:02 AM
**To:** Susan Kester <skester@bcnservices.com>; Susan Price <sprice@bcnservices.com>
**Cc:** Irene Dumanis <idumanis@Weisshospital.com>; Doris Gutierrez <dgutierrez@Weisshospital.com>
**Subject:** RE: Next Week

Change in Plans:

I need her walked out of here this afternoon for a variety of reasons including but not limited to the following:

1. Worker's Comp Insurance Fraud: Yes I finally saw the video of the incident where she supposedly was injured. Well guess what? It would have been impossible for her to be injured as she is not even in the line of action as clearly seen on video 
2. Dereliction of duties critical to the organization. She claims to have been submitting hospital data timely to CMS and designee that is required of us but we find no evidence of that. Moreover I got notified by CMS that my request for reconsideration was denied, something she submitted under my name/ signature without consulting or notifying me. I did not even know we had an adverse financial decision let alone requesting reconsideration!!
3. Posing as a member of our Medical Staff and benefiting from that such as free meals etc when she is not entitled.

I will of course not terminate her for cause but simply tell her that things are not working out during the probation period OR suspend her pending investigation. Please advise which during our HR update call.

Just some food for thought this morning? 😊

**Susan Price**

| | |
|---|---|
| **From:** | Prasad, Manoj <mkp@westsubmc.com> |
| **Sent:** | Sunday, June 18, 2023 1:32 PM |
| **To:** | Susan Price |
| **Cc:** | Irene Dumanis |
| **Subject:** | Re: [EXTERNAL]  RE: As discussed |

I have been doing a little more investigating.

May I get a copy of her photo ID (driver's license) and other I-9 documents please? It is possible that she may not be who she claims to be. Also please share her background check and resume with me.

We have uncovered several large gaps in our internal processes thanks to her!

1. HR issued her a Medical Staff Badge without checking so she enjoyed the privileges extended to our staff physicians in terms of access, free meals etc in addition to exposing us to liability if a patient followed any medical advice from her etc. by posing as a member of our medical staff.
2. Facilities gave her a hospital master key providing her unfettered access to the whole hospital. She supposedly came in on weekends to 'work'!
3. She would come in with full-sized suitcases and took it home from time to time, sometimes Security assisting here with her heavy suitcase.
4. She systematically visited every room often and knew the layout of the facility better than even I do!
5. The suitcase was chock full of things that no one bothered to question. I suspect that we will find items missing from the facility and stores although I do not know that to be fact yet.
6. Our two brilliant colleagues (Maria & Shubha) I sent to escort her out of our premises actually helped her carry that stuffed suitcase which even they recognized was a different one from what they had seen earlier, assisted with carrying books and tons of printed documents that are likely PHI to her car!
7. She milked her fake work injury to the full extent possible such as not working, having people bring her food to take home because she could barely see or stand up etc. etc..............

I suspect there is more to come. 

## **CERTIFICATE OF SERVICE**

I certify that I filed a true and correct copy of Defendants' Motion to Dismiss Count II of Plaintiff's Complaint on this 28th day of February, 2025, via this Court's ECF system, upon all counsel of record.

*/s/ Charles B. Leuin*
Charles B. Leuin