IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIRA KUO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-cv-1846 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| RESILIENCE HEALTHCARE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Kira Kuo ("plaintiff" or "Kuo") brings this action against her former employer Resilience Health Care—West Suburban Medical Center, LLC ("West Suburban") and its Chief Executive Officer, Dr. Manoj Prasad (collectively, "defendants") for retaliatory discharge, defamation, and violation of the Employee Retirement Income Security Act ("ERISA"). Defendants now move to dismiss only plaintiff's defamation claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion to dismiss plaintiff's claim for defamation, (Dckt. #5), is granted solely with respect to Kuo's defamation claim related to alleged defamatory statements defendant Prasad made to the Oak Park Police Department but is otherwise denied.

**I.       LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court

Case: 1:25-cv-01846 Document #: 20 Filed: 09/29/25 Page 2 of 12 PageID #:103

construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Dismissal of an action under Rule 12(b)(6) is "warranted only if no relief could be granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007).

When resolving a motion under Rule 12(b)(6), "in addition to the allegations set forth in the complaint itself," the Court may consider, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Indeed, it is "well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (cleaned up); *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (same, citing cases).

## II.   BACKGROUND

The Court takes the following facts from the complaint, (Dckt. #1-1), and the documents attached to defendants' motion to dismiss because they are referenced in plaintiff's complaint and central to her claims.

Plaintiff Kira Kuo—who holds a "Doctor of Medicine Degree and is Board Certified in Infection"—began working at West Suburban as an Infection Control Practitioner on May 8, 2023. (*Id*. ¶¶7–8). In that role, Kuo was responsible for, *inter alia*, the development, preparation, completion, and monitoring of budget items related to infection control, and for improving hospital infection control activities. (*Id*. ¶9). Kuo was also assigned the

responsibility of preparing and submitting surveys and reports related to infection control to external agencies such as the Center for Disease Control and Prevention's National Healthcare Safety Network ("NHSN"). (*Id*. ¶11).

### A. The NHSN Vaccine Report

Shortly after she started at West Suburban, Kuo became aware that West Suburban had to submit a certain vaccination report to the NHSN by May 15, 2023. (*Id*. ¶12). Kuo immediately began working to comply with this deadline; however, it was impossible for her to do so because West Suburban had failed to take steps to designate her as the facility administrator for filing NHSN reports. (*Id*. ¶13).

On May 11, 2023, Kuo proposed to her direct supervisor, Chief Nursing Officer Maria Suvacarov, that West Suburban request an extension on the impending report deadline. (*Id*. ¶¶15–16). Suvacarov responded via e-mail stating, "If you think that is best at this point than [sic] yes." (*Id*. ¶17). That same day, Kuo sent Suvacarov and West Suburban's Centers for Medicare and Medicaid Services ("CMS") Security Officer Jean Miller a copy of the completed extension request form, which Miller assisted in finalizing. (*Id*. ¶¶18–19). With Suvacarov's permission, Kuo then filed the extension request form on May 12, 2023. (*Id*. ¶20). Ultimately Kuo was designated as the Facility Administrator for West Suburban, and she immediately filed the vaccination report with NHSN. (*Id*. ¶¶21–22).

### B. Kuo's Workplace Injury

On May 24, 2023, a man entered West Suburban, assaulted a security guard, and then fled towards the revolving door exit in the main lobby. (*Id*. ¶23). At the same time, Kuo was entering West Suburban through the same revolving door. (*Id*. ¶¶ 24–25). The man forcefully pushed the revolving door in the opposite direction as Kuo and her head collided into the glass

3

door. (*Id*. ¶23). After Kuo began to experience pain in her head, shoulders, and back, along with nausea and dizziness, Suvacarov sent her to Employee Health, which in turn referred Kuo to the Occupational Health Centers of Illinois. (*Id*. ¶¶28, 31–32). Ultimately, Kuo was diagnosed with a concussion and upper back strain, placed on light duty, and restricted to only working four hours per day. (*Id*. ¶¶35–37). According to Kuo, after her workplace injury, West Suburban's demeanor towards her changed and her supervisors repeatedly asked her to break her medical restrictions. (*Id*. ¶38).

### C. Kuo's Suspension and Termination

On June 16, 2023, defendant Prasad summoned Kuo to his office, accused her of ruining his reputation by requesting an extension of the NHSN vaccination report, and placed her on an indefinite suspension pending investigation. (*Id*. ¶¶41–43). Throughout her suspension, Kuo tried contacting West Suburban regarding the status of her employment. (*Id*. ¶46). West Suburban failed to respond until December 24, 2023, when it sent Kuo a letter backdated to September 27, 2023, and notified her that she had been terminated effective June 16, 2023. (*Id*. ¶¶46–47).

### D. Defamation-Related Allegations

A year after her suspension, Kuo became aware of certain alleged defamatory statements Prasad made about her around the time of her suspension. (*Id.* ¶51). Specifically, on June 15, 2023, Prasad sent an e-mail to BCN Services' HR Manager Sue Kester, and its Strategic Services Manager, Susan Price, Weiss Memorial Hospital's CEO of Pipeline Irene Dumanis, and to Doris Gutierrez from Weiss Memorial stating as follows:

> I believe we will be separating Kira ko(?) the new Infection Prevention Individual from WSMC next week too. She is in her 90 day probation window but also on WC for an injury on the job to complicate matters. Will confirm shortly. The reason is that her performance from Day 1 has been dismal and now she sends

4

> something to the federal government CMS in my name WITHOUT asking me or informing me that has backfired for us and just come to light. Thoughts?

(*Id*. ¶52; Dckt. #6 at 14).[1]

The next day, on June 16, 2023, Prasad sent an e-mail to the same individuals, which stated:

> Change in Plans:
>
> I need her walked out of here this afternoon for a variety of reasons including but not limited to the following:
>
> 1. Worker's Comp Insurance Fraud: Yes I finally saw the video of the incident where she supposedly was injured. Well guess what? It would have been impossible for her to be injured as she is not even in the line of action as clearly seen on video
>
> 2. Dereliction of duties critical to the organization. She claims to have been submitting hospital data timely to CMS and designee that is required of us but we find no evidence of that. Moreover I got notified by CMS that my request for reconsideration was denied, something she submits under my name/signature without consulting or notifying me. I did not even know we had an adverse financial decision let alone requesting consideration!!
>
> 3. Posing as a member of our Medical Staff and benefitting from that such as free meals etc when she is not entitled.
>
> I will of course not terminate her for cause but simply tell her that things are not working out during the probation period OR suspend her pending investigation. Please advise which during our HR update call.
>
> Just some food for thought this morning?

(Dckt. #1-1 ¶53; Dckt. #6 at 14). A few hours later, Prasad provided the following update to the same individuals: "As discussed, a few minutes ago, I have suspended Kira pending investigation into the data submission matter. I also had her hand over her Medical Staff Badge to me." (Dckt. #6 at 14).

---

[1] Kuo did not attach any of Prasad's alleged defamatory e-mails to her complaint. However, she refers to the e-mails by date and quotes them in part. Accordingly, the Court may consider the e-mails themselves, which defendants attached to their motion to dismiss. *See Williamson*, 714 F.3d at 436.

A few days later, on June 18, 2023, Prasad e-mailed Price and Dumanis the following message:

> I have been doing a little more investigation.
>
> May I get a copy of her photo ID (driver's license) and other I-9 documents please? It is possible that she may not be who she claims to be. Also please share her background check and resume with me.
>
> We have uncovered several large gaps in our internal processes thanks to her!
>
> 1. HR issued her a Medical Staff Badge without checking so she enjoyed the privileges extended to our staff physicians in terms of access, free meals etc in addition to exposing us to liability if a patient followed any medical advice from her etc. by posing as a member of our medical staff.
>
> 2. Facilities gave her a hospital master key providing her unfettered access to the whole hospital. She supposedly came in on weekends to 'work'!
>
> 3. She would come in with full-sized suitcases and took it home from time to time, sometimes Security assisting her[] with her heavy suitcase.
>
> 4. She systematically visited every room often and knew the layout of the facility better than even I do!
>
> 5. The suitcase was chock full of things that no one bothered to question. I suspect we will find items missing from the facility and stores although I do not know that to be fact yet.
>
> 6. Our two brilliant colleagues (Maria & Shubha) I sent to escort her out of our premises actually helped her carry that stuffed suitcase which even they recognized was a different one from what they had seen earlier, assisted with carrying books and tons of printed documents that are likely PHI to her car!
>
> 7. She milked her fake work injury to the full extent possible such as not working, having people bring her food to take home because she could barely see or stand up etc. etc………
>
> I suspect there is more to come.

(Dckt. #1-1 ¶54; Dckt. #6 at 15).

Finally, on July 7, 2023, Prasad contacted the Oak Park Police Department via phone and verbally made a complaint against Kuo stating that "she claimed to be a licensed medical doctor

6

prior to being hired as an infection control specialist" and soon after she was hired, "Prasad found out [she] was not a licensed physician." (Dckt. #1-1 ¶55).

In her three-count complaint, plaintiff brings claims for common law retaliatory discharge against West Suburban (Count I), defamation *per se* against both defendants based on Prasad's June 2023 e-mails and his report to the Oak Park Police (Count II), and violation of ERISA against West Suburban (Count III).

### III. ANALYSIS

Defendants now seek to dismiss plaintiff's claim for defamation *per se* pursuant to Rule 12(b)(6), arguing that: (1) the alleged defamatory statements are not actionable because they are (a) categorically not defamatory *per se*; (b) statements of non-actionable opinion; and (c) subject to the defense of the truth; and (2) the alleged defamatory statements are otherwise privileged. Plaintiff responds that she has sufficiently stated a claim for defamation *per se*. For the following reasons, the Court agrees that plaintiff has stated a claim for defamation *per se* with respect to Prasad's June 2023 e-mails, which are not subject to dismissal based on the qualified privilege, but that Prasad's statements to the Oak Park Police are protected by the absolute privilege.

**A. Standard to state a claim for defamation.**

To state a claim for defamation under Illinois law, a plaintiff must "present facts showing the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that the publication caused damages." *Kallemeyn Collision Ctr., Inc. v. Standard Fire Ins. Co.*, 628 F.Supp.3d 769, 775 (N.D.Ill. 2022), *quoting Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). "A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the

7

community or deters the community from associating with her or him." *Green*, 917 N.E.2d at 459 (citing *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 206 (Ill. 1992)). A statement is considered *per se* defamatory if its "defamatory character is obvious and apparent on its face." *DeNicolo v. Hubbard Radio Chi., LLC*, No. 21-cv-6292, 2022 WL 17251278, at *3 (N.D.Ill. Nov. 28, 2022), *quoting Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831–32 (7th Cir. 2019).

### B. Plaintiff has sufficiently stated a claim for defamation *per se*.

"In Illinois, there are five categories of statements that are considered defamatory *per se*: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication." *Green*, 917 N.E.2d at 459.

Here, plaintiff has alleged that defendants made statements to third parties—via Prasad's June 2023 e-mails— that: (1) impute she has committed a crime, including insurance fraud and theft; (2) impute her ability to perform or that she lacks integrity in performing her employment duties; and (3) impute that she lacks ability in her profession, all of which she alleges caused her damages. This is sufficient to state a claim for defamation *per se* and defendants' argument to the contrary is simply misplaced. *See e.g.*, *Integrity Kokosing Pipeline Servs., LLC v. Pipeliners Union 798 United Ass*'n, No. 1:20-CV-2321-RLM-MG, 2021 WL 4194435, at *10 (S.D.Ind. Sept. 15, 2021) (plaintiff stated a claim where the alleged statements would "tend to injure reputation or to diminish esteem, respect, good will, or confidence in [plaintiff] and impute misconduct in [plaintiff's] profession") (cleaned up); *Sallis v. Warner Elektra Atl. Corp.*, No. 98

8

C 6505, 1999 WL 169423, at *5 (N.D.Ill. Mar. 18, 1999) (plaintiff stated a claim where the alleged statements would "impute a want of integrity in the discharge of the duties of [plaintiff's] employment and are injurious to his reputation."). Indeed, while every statement in the June 2023 e-mails may not be defamatory *per se*, other statements clearly are. To be clear, the "Court is not ruling on each individual statement [because] they are pled as one count of defamation, and not discrete counts of defamation." *Shophar v. Pathway Fam. Servs., LLC*, No. 22 CV 02333, 2024 WL 3950215, at *12 (N.D.Ill. Aug. 27, 2024).

Moreover, although defendants are correct that statements of opinion are not actionable and that the truth is a complete defense to defamation, *see generally Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993), these issues are better resolved on a full record following discovery and not at the pleading stage. *See Wessel v. Vill. of Monee*, No. 04 C 3246, 2010 WL 2523574, at *6 (N.D.Ill. June 14, 2010) ("While truth is a complete defense to defamation . . . generally [it] cannot defeat claims at the pleading stage."); *Flentye v. Kathrein*, 485 F.Supp.2d 903, 920–21 (N.D.Ill. 2007) ("[A]nalysis of whether particular statements are fact or opinion will be better served with an adequate factual record to determine the context in which the statements were made.").

### C. Defendants' qualified privilege defense cannot be decided at this stage.

Next, defendants argue that any defamatory statements in Prasad's June 2023 e-mails are protected by the qualified privilege. A "defamatory statement is not actionable if it is privileged." *Dobias v. Oak Park & River Forest High School Dist. 200*, 57 N.E.3d 551, 572 (Ill.App.Ct. 2016). "Qualified privilege is based on a policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information." *Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, No.

9

17 C 8816, 2022 WL 17338138, at *3 (N.D.Ill. Nov. 30, 2022) (cleaned up). "The elements of qualified privilege are (1) good faith by the defendant in making the statement; (2) an interest or duty to uphold; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only." *Kreith v. Am. Airlines, Inc.*, No. 20 C 1593, 2021 WL 780716, at *4 (N.D.Ill. Mar. 1, 2021) (cleaned up). "Once a qualified privilege has been established, a plaintiff may overcome it by pleading (and eventually proving) that the statement was made with actual malice—i.e., made with knowledge of its falsity or in reckless disregard of whether it is true or false." *Id*.

However, the qualified privilege "is an affirmative defense, not an element of a plaintiff's claim for defamation." *Kainrath v. Grider*, 115 N.E.3d 1224, 1233 (Ill.App.Ct. 2018). While ordinarily the plaintiff "need not anticipate and attempt to plead around affirmative defenses . . . [a]n exception applies when the allegations of the complaint . . . set forth everything necessary to satisfy the affirmative defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2010) (cleaned up); *see also Holmes v. Marion County Sheriff's Office*, 141 F.4th 818, 822 (7th Cir. 2025) (same). The Court cannot say that this is such a case because plaintiff has not pleaded everything necessary to satisfy the qualified privilege defense with respect to Prasad's June 2023 e-mails, particularly because she pleaded that Prasad made the statements "in bad faith and with malicious intent to injure [plaintiff], to punish her for suffering a workplace injury." (Dckt. #1-1 ¶74); *see Kreith*, 2021 WL 780716, at *4 (finding complaint fell short of establishing qualified privilege where plaintiff alleged that defendant "made the statements maliciously, with knowledge of their falsity and intent to cause injury."); *see also Shophar*, 2024 WL 3950215, at *14 ("Shophar has not pled himself out of court by alleging and thus admitting the ingredients of

10

the affirmative defense"). Such allegations of bad faith are fundamentally at odds with the qualified privilege defense, which requires a showing of good faith.

For these reasons, defendants' motion to dismiss plaintiff's claims for defamation based on qualified privilege is denied.

### D. Defendants' motion is granted solely with respect to Prasad's statements to the Oak Park Police Department.

Finally, defendants argue that Prasad's statements to the Oak Park Police Department that plaintiff was misrepresenting herself as a licensed physician are protected by the absolute privilege. In Illinois, "'statements made to law enforcement officials for the purpose of instituting legal proceedings, are granted absolute privilege' against defamation actions." *Shea v. Winnebago Cnty. Sheriff's Dep't*, 746 Fed.Appx. 541, 547 (7th Cir. 2018), *quoting Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1055 (Ill.App.Ct. 2009). Plaintiff did not substantively respond to this argument in her response (instead focusing on the qualified privilege) and has thus waived any such argument. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) (arguments which are underdeveloped or unsupported by legal authority are waived). Moreover, in contrast to the qualified privilege, plaintiff has set forth everything necessary to establish that Prasad's statements to the Oak Park Police are protected by the absolute privilege. *See Shea*, 746 Fed.Appx. at 547; *Benitez v. Am. Standard Cirs., Inc.*, No. 08 CV 1998, 2009 WL 742686, at *7 (N.D.Ill. Mar. 18, 2009) ("[S]tatements made to police officers regarding a commission of a crime are protected by an absolute privilege.") (collecting Illinois cases).

The Court thus grants defendants' motion to dismiss solely with respect to Kuo's defamation claim related to the alleged defamatory statements that Prasad made to the Oak Park Police.

11

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's claim for defamation, (Dckt. #5), is granted solely with respect to Kuo's defamation claim related to alleged defamatory statements made by defendant Prasad to the Oak Park Police Department but is otherwise denied.  Defendants shall answer the complaint on or before October 21, 2025.

**DATE: September 29, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**